## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 (jointly administered) |
| | ) | |
| MICHAEL'S MARKET, INC., *et al.*,[1] | ) | Case No. 11-52013 |
| | ) | |
| Debtors. | ) | Honorable Carol A. Doyle |
| | ) | |

**AGREED NINTH INTERIM ORDER (I) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II) APPROVING THE FORM AND METHOD OF NOTICE OF, AND SCHEDULING, THE FINAL HEARING ON THE USE OF CASH COLLATERAL**

Upon the motion (the "Motion") of Michael's Market, Inc. ("Michael's"), together with its affiliated Chapter 11 debtors (collectively, the "Debtors"), debtors and debtors-in-possession in their respective cases, pursuant to sections 361, 363 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order authorizing the Debtors to use cash that may be Cash Collateral of the Federal Deposit Insurance Corporation as Receiver for Premier Bank ("FDIC-R") and providing adequate protection to the FDIC-R or to use cash that may be trust assets under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) and thus may be neither Cash Collateral (as defined hereafter) or property of the estates, but property of those creditors asserting claims (the "PACA Claimants") under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et. seq. ("PACA"); the Court having entered on January 5, 2012 the Agreed First Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and

---

[1] The Debtors are the following entities: Michael's Market, Inc. (Case No. 11-52013), 2820-30 North Cicero, LLC (Case No. 11-52017), 4815 W. Wolfram, LLC (Case No. 11-52020), CP No. 3, Inc. f/k/a Cermak Produce No. 3, Inc. (Case No. 11-52028), DMM Produce, Inc. (Case No. 11-52024), North Avenue Fresh Market, LLC (Case No. 11-52032), Mayfair Market Place, Inc. (Case No. 11-52035), Jenor, LLC (Case No. 11-52043), Jenor, LLC – Michael's Fresh Market (Case No. 11-52042), and Jenor, LLC – Downers Grove (Case No. 11-52045).

Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 37] (the "First Interim Order"); the Court having entered on January 13, 2012 the Agreed Second Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 62] (the "Second Interim Order"); the Court having entered on February 20, 2012 the Agreed Third Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 116] (the "Third Interim Order"); the Court having entered on March 6, 2012 the Agreed Fourth Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 148] (the "Fourth Interim Order"); the Court having entered on April 3, 2012 the Agreed Fifth Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 189] (the "Fifth Interim Order"); the Court having entered on May 17, 2012 the Agreed Sixth Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 259] (the "Sixth Interim Order");  the Court having entered on June 22, 2012 the Amended Agreed Seventh Interim Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral [Dkt. No. 284] (the "Seventh Interim Order"); the Court having entered on July 26, 2012 the Amended Agreed Eighth Interim

Order (I) Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and (II)

Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of

Cash Collateral [Dkt. No. 321] (the "Eighth Interim Order"); it appearing to the Court that the

interim relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors and other parties-in-interest; it appearing that notice of the Motion was sufficient under

the particular circumstances and that no other or further notice need be given; it is hereby

**DETERMINED, ORDERED AND ADJUDGED THAT:**

1.      *Jurisdiction.*  This Court has core jurisdiction over these bankruptcy cases, the

Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Use of Prepetition Collateral.*  Pursuant to this interim order (the "Ninth Interim

Order"), the Debtors are hereby authorized to use the cash collateral of the FDIC-R, Dearborn

Wholesale Grocers LP ("Dearborn") or of any other secured creditor (the "Cash Collateral") or

to use cash that may be subject to the PACA Trusts (and may not be property of the Debtors or

their estates) pursuant to sections 361, 363 and 552 of the Bankruptcy Code and any other

collateral in which the FDIC-R, Dearborn or any other secured creditor or the PACA Claimants

has an interest (together with the Cash Collateral, the "Prepetition Collateral") to pay the

Debtors' operating and overhead expenses (but not any professional fees), as more specifically

described in the budgets attached hereto as **Exhibit A** (collectively, the "Operating Budget");

provided, however, that only Debtors DMM Produce, Inc. (Harvey Fresh Market), CP No. 3, Inc.

(Cermak Produce), North Avenue Fresh Market, Inc., 2820-30 North Cicero, LLC and Mayfair

Market Place, Inc. are authorized to use Cash Collateral hereunder[2]; provided, however, that notwithstanding anything to the contrary in this Ninth Interim Order, the authorization of Mayfair Market Place, Inc. to use Cash Collateral shall cease on the date upon which the sale of the Mayfair Market Place, Inc. store closes.   These Debtors' interim use of the Prepetition Collateral is authorized until October 31, 2012, and may not be further extended other than pursuant to order of the Court.

3.      *Adequate Protection.*   As adequate protection, the Debtors shall continue operating their businesses and use the Cash Collateral to pay operating and overhead expenses, as more specifically described in the Operating Budget, and the FDIC-R, Dearborn and each other secured creditor are hereby granted replacement liens; provided, however, that any such replacement liens shall apply only to any category of post-petition collateral in which that secured creditor held a valid, perfected security interest as of the Petition Date.   In addition, any replacement liens shall attach in favor of a secured creditor in the order of priority of its secured claim relative to other secured claims, shall attach only to the extent and in the amount that it held a valid, perfected "secured claim" in property of a Debtor pursuant to section 506(a) of the Bankruptcy Code in that category of collateral as of the Petition Date and shall pertain only to categories of property owned by the same Debtor(s) with respect to whom that creditor held a secured claim on the Petition Date.   The Debtors hereby waive any right to surcharge the Prepetition Collateral or any postpetition collateral pursuant to sections 105, 506(c), 552 of the Bankruptcy Code or otherwise for the periods during which the Debtors had use of the Cash Collateral pursuant to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Interim Orders.   As adequate protection, the Debtors will grant the PACA Claimants a super-

---

[2] The FDIC-R, Dearborn and the PACA Claimants do not consent to the use of Cash Collateral by any Debtor not set forth in this Paragraph 2.   Any other Debtor seeking authorization to use Cash Collateral shall submit an Operating Budget in advance of the continued hearing on Cash Collateral.

priority lien in the amount of the PACA trusts, as determined by the United States District Court for the Northern District of Illinois (the "District Court") in the PACA Claims Procedure Action (as defined below). Nothing herein shall limit the rights of the FDIC-R or other interested parties (including the Committee, as defined below) to argue that a super-priority lien should only be allowed against a specific Debtor. As further adequate protection, the Debtors shall provide the FDIC-R, the Official Committee of Unsecured Creditors (the "Committee"), Dearborn, any other secured party and the PACA Claimants with budget-to-actual reports not later than the tenth (10th) business day of each month which cover the preceding month, and shall further provide the FDIC-R, the Committee, Dearborn any other secured party and the PACA Claimants with such additional financial reports as such parties may reasonably request from time to time in writing. All issues pertaining to the validity, priority, amount and perfection of liens and security interests (including replacement liens), other than those of the super-priority liens of the PACA trusts, are reserved for later determination by the Court. All issues with respect to the determination of which parties are PACA Claimants and the amounts of their allowed PACA claims (including the corresponding amounts of any super-priority liens) shall be determined in the action (the "PACA Claims Procedure Action") styled as *Anthony Marano Company, et al. v. CP No. 3, Inc. f/k/a Cermak Produce No. 3 d/b/a Cermak Produce No. 3 a/t/a Cermak #3, et al.*, Case No. 1:12-cv-04168, pending before the District Court, and the rights of all parties are expressly reserved with respect thereto.

4.      *Funding of PACA Trust Account.* The Debtors shall continue to make weekly deposits of $9,000 (in the aggregate) into the PACA Trust Account (as defined in the Second Interim Order) each Tuesday via wire transfer until the expiration of this Ninth Interim Order or further order of the Court. All allowed PACA claims as determined in the PACA Claims

Procedure Action shall participate pro rata in the ownership of the PACA Trust Account and any distributions therefrom shall be made pursuant to the further order of the District Court. The PACA Trust Account shall continue to be operated as a fiduciary account for the benefit of the holders of all allowed claims under PACA. The PACA Trust Account shall not be subject to execution, levy or attachment by any creditor without further order of the District Court. The Debtors and the PACA Claimants shall discuss further deposits by the Debtors into the PACA Trust Account, and the Debtors are authorized to make additional deposits into the PACA Trust Account as may be agreed to in writing with the PACA Claimants, and subsequently approved following notice to the Committee, the FDIC-R and Dearborn, under any amendments to the Operating Budget. The Debtors' funding of the PACA Trust Account does not limit the rights of any of the PACA Claimants to seek relief from any Debtor or from any asset of any Debtor. The rights of the Debtors and any party with requisite standing (including the Committee) with respect to all issues regarding the validity and amount of any PACA claim, as well as the priority of any PACA claim to the PACA Trust Account, including future deposits therein, are expressly reserved and shall be determined by the District Court in the PACA Claims Procedure Action. Notwithstanding anything to the contrary set forth in this Ninth Interim Order, no administrative or professional fees for the U.S. Trustee, professionals retained by the Debtors, or counsel for the Committee shall be paid from the PACA Trust Account or from any other PACA trust assets (including produce, any products therefrom, sales proceeds from produce, including commingled sales proceeds, inventory, and any assets acquired or retained with commingled sales proceeds of produce).

5.     *Interim Adequate Protection of FDIC-R with Respect to the Shopping Center.* Solely for purposes of this Ninth Interim Order, payment of contractual non-default interest in

the aggregate approximate amount of $30,797.70 not later than the fifth (5) business day of each

month, plus compliance with the Operating Budget for 2820-30 N. Cicero, LLC attached as

**Exhibit A**, shall serve for the period covered by this Ninth Interim Order as adequate protection

for the interests of the FDIC-R with respect to its mortgage rights and assignments of rents with

respect to the shopping center owned by 2820-30 N. Cicero, LLC; provided, however, that such

payment shall not be made from PACA trust assets (including produce, any products therefrom,

sales proceeds from produce, including commingled sales proceeds, inventory, and any assets

acquired or retained with commingled sales proceeds of produce). Objections to the claims, liens

and security interests of the FDIC-R are fully reserved, however; this reservation of rights shall

include, without limitation, all of the Debtors' rights to challenge the validity, perfection,

priority, amount and voidability of any of the FDIC-R's security interests and liens, and all of the

Debtors' defenses, counterclaims, setoff rights, rights to seek equitable subordination and

equitable disallowance of the FDIC-R's claims and liens, and other rights and remedies against

the FDIC-R and its claims. The FDIC-R and the Debtors further reserve all of their respective

rights with respect to the value of the foregoing shopping center, adequate protection, including

whether payment of the contractual non-default interest provided above constitutes the same, and

all related issues, except as provided expressly in this Ninth Interim Order.

6.     *Committee Carve-Out; Reservation of Rights with Respect to Other Carve-Outs*

*for Professionals*. So long as this Ninth Interim Order remains in effect, any security interests,

liens and priority claims granted herein to the FDIC-R, any other secured creditor, or the PACA

Claimants shall have priority with respect to the Prepetition Collateral, including the Cash

Collateral and any other replacement collateral granted under the seven Interim Orders or this

Order, over all costs and expenses of administration incurred and shall have priority over any and

all unsecured claims and expenses in these Chapter 11 cases, whether incurred or arising prior or

subsequent to the entry of this Ninth Interim Order, <u>except for</u>: up to $50,000 for fees and

expenses originally approved in the Sixth Interim Order for counsel retained by the Committee

solely from the Prepetition Collateral and Cash Collateral securing the security interests, liens

and priority claims of the FDIC-R (the "<u>Committee Carve-Out</u>"). The rights of the Committee's

professionals in respect to the Committee Carve-Out shall survive the occurrence of a

Termination Event. The rights of any party in interest with requisite standing are reserved with

respect to the allocation of the Committee Carve-Out amongst the various Debtors. Unless

otherwise ordered by the Court, only up to $15,000 of the Committee Carve-Out may be used to

object, contest, or raise any defense to the validity, perfection, priority, extent or enforceability

of any amount due to the FDIC-R, or the liens or claims of the FDIC-R, including issues related

to equitable subordination or equitable disallowance, as well as to assert any claims against the

FDIC-R or defenses to their claims, unless otherwise ordered by the Court. The Debtors and the

Committee reserve their rights in all future orders governing the use of Cash Collateral to request

priority carve-outs for (i) the fees and expenses of their respective professionals and (ii) claims

for fees payable to the United States Trustee under 28 U.S.C. § 1930(a), and any other party in

interest with requisite standing, including, without limitation, the PACA Claimants, the FDIC-R

and Dearborn, reserves its right to object to any such request. Notwithstanding anything to the

contrary set forth in this Ninth Interim Order, any such carve-outs approved by the Court shall

not be paid from the PACA Trust Account or from any other PACA trust assets (including

produce, any products therefrom, sales proceeds from produce, including commingled sales

proceeds, inventory, and any assets acquired or retained with commingled sales proceeds of

produce).

7.   *Termination of Use of Cash Collateral.*  Notwithstanding anything to the contrary contained herein, the Debtors' right to use the Cash Collateral as set forth herein shall expire on the earliest to occur of:  (a) October 31, 2012 at 5:00 p.m. (CST); or (b) the occurrence of one or more of the following Termination Events:

(a)   entry of an order converting the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code; provided, however, that the conversion of a specific Debtor's case shall only be a Termination Event with respect to the use of Cash Collateral by that specific Debtor;

(b)   entry of an order dismissing or suspending the Chapter 11 cases; provided, however, that the dismissal or suspension of a specific Debtor's case shall only be a Termination Event with respect to the use of Cash Collateral by that specific Debtor;

(c)   the payment by the Debtors, without the written consent of the FDIC-R, Dearborn, the PACA Claimants or any other respective secured creditor in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of the calendar week after which this case was filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of, respectively, 125% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter; or

(d)   the Debtors breach or otherwise fail to abide by any of the terms or provisions of the Ninth Interim Order or Final Order.

8.   On and after the Termination Event, the Debtors shall immediately cease using any of the Cash Collateral; provided, however, that the Debtors reserve the right to seek Court

authorization to continue to use such Cash Collateral, and the FDIC-R, Dearborn and each other secured creditor and the PACA Claimants reserve the right to oppose such relief.

9.    *Operating Budget*.  The Debtors may conduct their businesses and pay their expenses pursuant to the Operating Budget until October 31, 2012.

10.    *Effectiveness*.  This Ninth Interim Order shall take effect on Friday, September 28, 2012 at 5:00 p.m.; provided, however, that this Ninth Interim Order shall be without prejudice to the rights of all creditors, including the PACA Claimants, and the Debtors to make legal arguments or contest factual matters in any future proceedings, contested matters, adversary proceedings or other disputes, including, but not limited to the continued or final hearing on the Motion.

11.    *Notice*.  Not later than October 24, 2012, the Debtors shall serve pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(1)(C) a copy of their Proposed Final Cash Collateral Order (or subsequent Interim Order) via First-Class U.S. mail or electronic mail upon: (a) the United States Trustee; (b) the Committee and its counsel; (c) the FDIC-R and its counsel; (d) any entity that has an interest in the Cash Collateral; (e) the consolidated list of the twenty (20) largest creditors in the Debtors' jointly-administered cases; and (f) any party who filed a request for notices in these Chapter 11 cases pursuant to Bankruptcy Rule 2002 as of the date of this Ninth Interim Order.

12.    *Continued Hearing*.  The continued hearing on the Debtors' use of the Prepetition Collateral, including Cash Collateral, shall be held before the Honorable Carol A. Doyle on October ___, 2012 at 10:30 a.m. in Courtroom 742, 219 South Dearborn Street, Chicago, Illinois.

Dated: _____                    _____
                                           Honorable Carol A. Doyle
                                           United States Bankruptcy Judge

**EXHIBIT A**

<u>OPERATING BUDGET</u>

# Cermak Produce No. 3

| | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 24 | 37 | 38 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/9 to 8/15 | 8/16 to 8/22 | 8/23 to 8/29 | 8/30 to 9/5 | 9/6 to 9/12 | 9/13 to 9/19 | 9/20 to 9/26 | 9/27 to 10/3 | 10/4 to 10/10 | 10/11 to 10/17 | 10/18 to 10/24 | 10/25 to 10/31 | 11/1 to 11/7 | |
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | |
| Daily Sales | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 200,000 | 140,000 | 1,820,000 |
| Total Income | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 200,000 | 140,000 | 1,820,000 |
| Cost of Goods Sold % | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| Cost of Goods | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 1,274,000 |
| **Total COGS** | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 1,274,000 |
| **Gross Profit** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 102,000 | 42,000 | 546,000 |
| **Expense** | | | | | | | | | | | | | | |
| Total Advertising Expenses | 1,249 | 3,811 | 4,718 | 2,979 | 4,981 | 3,192 | 3,420 | 3,135 | 3,151 | 3,139 | 3,196 | 3,149 | 2,024 | 41,812 |
| Total Auto / Transportation | 299 | 510 | 350 | 248 | 303 | 343 | 795 | 301 | 445 | 523 | 278 | 70 | 816 | 5,280 |
| Total Bank Charges | 13 | 0 | 0 | 13 | 13 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 1,146 | 1,187 |
| Total Credit Card Charges | 0 | 0 | 3,611 | 3,463 | 3,463 | 4,580 | 0 | 0 | 3,050 | 50 | 38 | 300 | 27 | 11,039 |
| Total Insurance | 0 | 0 | 0 | 0 | 0 | 4,580 | 4,580 | 0 | 0 | 0 | 6,240 | 0 | 0 | 15,474 |
| Total Lease | 155 | 0 | 0 | 0 | 0 | 397 | 0 | 0 | 0 | 96 | 75 | 0 | 0 | 648 |
| Total Licenses & Other Taxes/Fee | 0 | 0 | 325 | 190 | 0 | 0 | 0 | 0 | 0 | 0 | 70 | 75 | 0 | 395 |
| Total Maintenance and Repairs | 0 | 530 | 3,355 | 1,592 | 5,839 | 5,390 | 40 | 440 | 507 | 3,140 | 440 | 125 | 140 | 16,177 |
| Total Rent | 10,000 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 30,000 |
| Total Salaries/Wages | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 286,000 |
| Total Supplies | 3,694 | 3,550 | 3,859 | 2,478 | 3,203 | 2,215 | 3,205 | 2,963 | 3,032 | 2,030 | 3,127 | 2,879 | 2,879 | 39,016 |
| Total PACA | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| Total Repay Taxes | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 26,000 |
| Total Utilities | 1,144 | 1,504 | 2,046 | 2,046 | 2,710 | 2,710 | 1,056 | 3,708 | 4,207 | 2,000 | 1,226 | 2,906 | 3,236 | 29,326 |
| Total Vendor Delivery Expenses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Total Expenses** | 43,803 | 37,004 | 47,995 | 34,942 | 45,839 | 51,247 | 40,095 | 37,848 | 41,391 | 45,990 | 41,625 | 36,305 | 37,270 | 541,354 |
| **Ending Cash Balance** | 74,817 | 73,014 | 78,010 | 79,073 | 75,234 | 65,987 | 67,882 | 72,044 | 72,652 | 68,682 | 69,038 | 134,733 | 134,733 | |
| | (1,803) | 4,996 | (5,999) | 7,068 | (3,839) | (9,247) | 1,505 | 4,152 | 609 | (9,390) | 378 | 65,695 | 4,730 | 4,946 |
| Sales | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 200,000 | 140,000 | 1,820,000 |
| Cost of Goods Sold | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 98,000 | 1,274,000 |
| Expenses | 43,803 | 37,004 | 47,995 | 34,942 | 45,839 | 51,247 | 40,095 | 37,848 | 41,391 | 45,990 | 41,625 | 36,305 | 37,270 | 541,354 |

# North Ave Fresh Market

| | 27 (8/9 to 8/15) | 28 (8/16 to 8/22) | 29 (8/23 to 8/29) | 30 (8/30 to 9/5) | 31 (9/6 to 9/12) | 32 (9/13 to 9/19) | 33 (9/20 to 9/26) | 34 (9/27 to 10/3) | 35 (10/4 to 10/10) | 36 (10/11 to 10/17) | 37 (10/18 to 10/24) | 38 (10/25 to 10/31) | 39 (11/1 to 11/7) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | |
| Daily Sales | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 1,560,000 |
| Total Income | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 1,560,000 |
| Cost of Goods Sold % | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| Cost Of Goods | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 1,092,000 |
| Total COGS | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 1,092,001 |
| **Gross Profit** | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 467,999 |
| **Expense** | | | | | | | | | | | | | | |
| Total Advertising Expenses | 3,266 | 3,934 | 2,065 | 3,450 | 5,522 | 3,816 | 3,832 | 3,678 | 4,007 | 3,901 | 3,829 | 3,832 | 3,836 | 48,998 |
| Total Auto / Transportation | | 389 | 80 | 80 | 50 | 233 | 70 | 70 | 95 | 85 | 229 | 20 | 25 | 1,347 |
| Total Bank Charges | 13 | 0 | 0 | 0 | 13 | 0 | 133 | 150 | 150 | 13 | 0 | 28 | 0 | 350 |
| Total Credit Card Charges | 191 | 115 | 252 | 162 | 150 | 167 | 125 | 238 | 137 | 135 | 135 | 116 | 130 | 2,054 |
| Total Insurance | 589 | 740 | 779 | 3,777 | 794 | 778 | 505 | 2,932 | 721 | 756 | 2,799 | 623 | 778 | 18,568 |
| Total Lease | 165 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 255 | 0 | 0 | 255 | 255 | 1,049 |
| Total Licenses & Other Taxes/Fees | 165 | 0 | 0 | 210 | 165 | 0 | 330 | 330 | 285 | 0 | 0 | 0 | 0 | 665 |
| Total Maintenance and Repairs | 1 | 0 | 325 | 0 | 0 | 0 | 57 | 50 | 0 | 0 | 226 | 0 | 0 | 655 |
| Total Rent | 28,000 | 0 | 0 | 0 | 0 | 28,000 | 0 | 0 | 0 | 28,000 | 0 | 0 | 0 | 84,000 |
| Total Salaries/Wages | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 195,000 |
| Total Supplies | 1,260 | 3,460 | 2,729 | 2,404 | 2,974 | 2,029 | 3,187 | 1,964 | 1,789 | 3,514 | 2,648 | 2,657 | 2,657 | 33,242 |
| Total PACA | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| Total Utilities | 966 | 10,418 | 79 | 351 | 2,789 | 5,476 | 4,251 | 483 | 0 | 6,071 | 1,182 | 306 | 1,882 | 33,864 |
| Total Vendor Delivery Expenses | 130 | 968 | 432 | 0 | 102 | 872 | 440 | 49 | 120 | 120 | 120 | 173 | 187 | 3,704 |
| **Total Expense** | 52,300 | 39,475 | 24,774 | 28,801 | 30,889 | 60,118 | 30,941 | 27,588 | 25,308 | 60,770 | 29,170 | 25,728 | 28,259 | 464,121 |

| | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Expense | (16,300) | (3,475) | 11,226 | 7,199 | 5,111 | (24,118) | 5,059 | 8,412 | 10,692 | (24,770) | 6,830 | 10,274 | 7,741 | 3,879 |
| Ending Cash Balance | 14,130 | (2,170) | (5,645) | 5,580 | 12,779 | 17,889 | (6,228) | (1,169) | 10,682 | (6,835) | (5) | (5) | 10,269 | 3,879 |
| Sales | 134,130 | 117,830 | 114,355 | 125,580 | 132,779 | 137,889 | 113,772 | 118,831 | 127,243 | 137,895 | 113,165 | 119,995 | 130,269 | |
| Cost of Goods Sold | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 1,560,000 |
| Expenses | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 1,092,000 |
| | 52,300 | 39,475 | 24,774 | 28,801 | 30,889 | 60,118 | 30,941 | 27,588 | 25,308 | 60,770 | 29,170 | 25,728 | 28,259 | 464,121 |

# Harvey Fresh Market

| | 27 8/9 to 8/15 | 28 8/16 to 8/22 | 29 8/23 to 8/29 | 30 8/30 to 9/5 | 31 9/6 to 9/12 | 32 9/13 to 9/19 | 33 9/20 to 9/26 | 34 9/27 to 10/3 | 35 10/4 to 10/10 | 36 10/11 to 10/17 | 24 10/18 to 10/24 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | |
| **Income** | | | | | | | | | | | |
| Daily Sales | | | | | | | | | | | |
| Total Sales | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 |
| Total Income | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 |
| Cost of Goods Sold % | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| Cost Of Goods | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 |
| Total COGS | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 |
| Gross Profit | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 | 49,500 |
| **Expense** | | | | | | | | | | | |
| Total Advertising Expenses | 3,316 | 4,102 | 2,199 | 3,686 | 5,684 | 3,981 | 4,045 | 3,962 | 3,856 | 3,835 | 3,633 |
| Total Auto / Transportation | 240 | 432 | 70 | 139 | 281 | 582 | 357 | 443 | 680 | 345 | 688 |
| Total Bank Charges | 13 | 13 | 400 | 0 | 13 | 0 | 0 | 0 | 79 | 13 | 289 |
| Total Credit Card Charges | 314 | 2,827 | 430 | 160 | 167 | 0 | 144 | 421 | 214 | 290 | 1,365 |
| Total Insurance | 1,617 | 4,739 | 1,462 | 1,357 | 1,356 | 1,570 | 1,415 | 1,783 | 1,378 | 4,766 | 2,847 |
| Total Lease | 0 | 135 | 1,547 | 139 | 0 | 135 | 1,547 | 0 | 259 | 0 | 443 |
| Total Licenses & Other Taxes/Fees | 0 | 0 | 325 | 0 | 0 | 135 | 0 | 0 | 0 | 443 | 0 |
| Total Maintenance and Repairs | 850 | 236 | 128 | 283 | 1,089 | 280 | 3,965 | 1,023 | 1,565 | 188 | 2,258 |
| Total Rent | 32,150 | 0 | 0 | 0 | 0 | 73 | 0 | 0 | 0 | 32,150 | 0 |
| Total Salaries/Wages | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| Total Supplies | 2,420 | 3,653 | 2,806 | 1,535 | 3,446 | 3,170 | 2,614 | 1,327 | 4,434 | 1,868 | 3,329 |
| Total Utilities | 4,073 | 1,232 | 583 | 5,849 | 14,981 | 87 | 2,148 | 1,775 | 6,446 | 1,674 | 384 |
| Total PACA | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Total Vendor Delivery Expenses | 0 | 100 | 424 | 340 | 200 | 210 | 181 | 254 | 182 | 183 | 283 |
| Total Expense | 70,994 | 43,456 | 36,312 | 39,499 | 52,630 | 69,659 | 42,417 | 36,389 | 45,073 | 71,322 | 41,840 |
| Ending Cash Balance | (21,494) | 6,044 | 13,188 | 10,001 | (3,130) | (20,159) | 7,083 | 13,111 | 4,427 | (21,822) | 7,860 |
| Sales | 29,054 | 7,560 | 13,604 | 26,782 | 36,783 | 33,663 | 13,505 | 20,588 | 33,699 | 38,126 | 16,304 |
| Cost of Goods Sold | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 | 165,000 |
| Expenses | 194,054 | 172,560 | 178,604 | 191,782 | 201,783 | 198,663 | 178,505 | 185,588 | 198,699 | 203,126 | 181,304 |
| | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 | 115,500 |
| | 186,494 | 158,956 | 151,812 | 154,999 | 188,130 | 185,159 | 157,917 | 151,889 | 160,573 | 186,822 | 157,340 |
| | 70,994 | 43,456 | 36,312 | 39,499 | 52,630 | 69,659 | 42,417 | 36,389 | 45,073 | 71,322 | 41,840 |
| | 7,560 | 13,604 | 26,792 | 36,783 | 33,663 | 13,505 | 20,588 | 33,699 | 38,126 | 16,304 | 23,864 |

*Harvey Fresh J*

| | 37<br>10/25 to 10/31 | 38<br>11/1 to 11/7 | Total |
|---|---|---|---|
| **Ordinary Income/Expense** | | | |
| Income | | | |
| Daily Sales | 165,000 | 165,000 | 2,145,000 |
| Total Income | 165,000 | 165,000 | 2,145,000 |
| Cost of Goods Sold % | 70% | 70% | 70% |
| Cost Of Goods | 115,500 | 115,500 | 1,501,500 |
| Total COGS | 115,500 | 115,500 | 1,501,500 |
| Gross Profit | 49,500 | 49,500 | 643,500 |
| Expense | | | |
| Total Advertising Expenses | 4,270 | 3,856 | 50,827 |
| Total Auto / Transportation | 326 | 326 | 4,880 |
| Total Bank Charges | 0 | 28 | 845 |
| Total Credit Card Charges | 444 | 289 | 8,637 |
| Total Insurance | 1,234 | 1,235 | 28,574 |
| Total Lease | 1,239 | 259 | 5,702 |
| Total Licenses & Other Taxes/Fees | 105 | 0 | 710 |
| Total Maintenance and Repairs | 1,275 | 290 | 13,241 |
| Total Rent | 0 | 0 | 96,450 |
| Total Salaries/Wages | 23,000 | 23,000 | 299,000 |
| Total Supplies | 3,179 | 3,956 | 37,740 |
| Total Utilities | 721 | 5,062 | 43,804 |
| Total PACA | 3,000 | 3,000 | 39,000 |
| Total Vendor Delivery Expenses | 354 | 324 | 3,036 |
| **Total Expense** | **10,353** | **7,782** | **13,046** |
| | 39,147 | 41,718 | 630,454 |

| | 37 | 38 |
|---|---|---|
| Ending Cash Balance | 23,964 | 34,317 |
| Sales | 165,000 | 165,000 |
| Cost of Goods Sold | 188,984 | 199,317 |
| | 115,500 | 115,500 |
| Expenses | 39,147 | 41,718 |
| | 154,647 | 157,218 |
| | 34,317 | 42,100 |

# Mayfair Market Place

| | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/9 to 8/15 | 8/16 to 8/22 | 8/23 to 8/29 | 8/30 to 9/5 | 9/6 to 9/12 | 9/13 to 9/19 | 9/20 to 9/26 | 9/27 to 10/3 | 10/4 to 10/10 | 10/11 to 10/17 | 10/18 to 10/24 | 10/25 to 10/31 | 11/1 to 11/7 | Total |
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | |
| Daily Sales | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 1,430,000 |
| Total Income | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 1,430,000 |
| Cost Of Goods Sold % | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| Cost Of Goods | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 1,001,000 |
| Total COGS | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 1,001,000 |
| Gross Profit | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 429,000 |
| **Expense** | | | | | | | | | | | | | | |
| Total Advertising Expenses | 1,126 | 3,499 | 2,486 | 942 | 1,175 | 2,379 | 1,039 | 3,702 | 1,213 | 3,695 | 2,443 | 1,191 | 1,256 | 26,144 |
| Total Auto / Transportation | 264 | 608 | 280 | 300 | 293 | 508 | 200 | 100 | 164 | 255 | 208 | 2,703 | 64 | 5,947 |
| Total Bank Charges | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Credit Card Charges | 1,912 | 648 | 654 | 687 | 1,974 | 813 | 466 | 752 | 1,808 | 575 | 646 | 894 | 694 | 12,523 |
| Total Insurance | 4,466 | 778 | 915 | 7,204 | 861 | 869 | 4,996 | 3,046 | 877 | 885 | 6,970 | 346 | 877 | 33,089 |
| Total Lease | 4,853 | 0 | 1,047 | 0 | 0 | 4,853 | 1,047 | 4,853 | 0 | 0 | 1,047 | 0 | 0 | 17,703 |
| Total Licenses & Other Taxes/Fees | 0 | 0 | 325 | 0 | 0 | 0 | 341 | 0 | 0 | 0 | 0 | 0 | 0 | 325 |
| Total Maintenance and Repairs | 552 | 0 | 116 | 247 | 40 | 95 | 0 | 0 | 0 | 0 | 333 | 513 | 0 | 2,248 |
| Total Rent | 18,717 | 3,600 | 0 | 0 | 18,717 | 0 | 0 | 0 | 0 | 18,717 | 0 | 0 | 0 | 66,950 |
| Total Salaries/Wages | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 182,000 |
| Total Supplies | 1,536 | 2,681 | 2,517 | 963 | 1,539 | 1,604 | 1,326 | 1,398 | 3,799 | 979 | 1,898 | 1,271 | 950 | 22,462 |
| Total PACA | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| Total Utilities | 4,030 | 606 | 0 | 4,337 | 200 | 0 | (335) | 3,390 | 4,289 | 693 | 100 | 632 | 2,044 | 19,626 |
| Total Vendor Delivery Expenses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 150 | 175 | 0 | 0 | 182 | 0 | 507 |
| Total Expense | 53,904 | 29,983 | 24,980 | 31,680 | 41,799 | 31,721 | 26,082 | 34,391 | 29,323 | 42,798 | 34,245 | 24,550 | 23,068 | 428,524 |
| Net Income | (20,904) | 3,017 | 8,020 | 1,320 | (8,799) | 1,279 | 6,918 | (1,391) | 3,677 | (9,798) | (1,245) | 8,450 | 9,932 | 476 |
| Beginning Cash Balance | (6,092) | (26,996) | (23,979) | (15,960) | (14,640) | (23,439) | (22,160) | (15,241) | (16,632) | (12,955) | (22,754) | (23,999) | (15,549) | (6,092) |
| Sales | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 1,430,000 |
| Available Cash Balance | 103,908 | 83,004 | 86,021 | 94,040 | 95,360 | 86,561 | 87,840 | 94,759 | 93,368 | 97,045 | 87,246 | 86,001 | 94,451 | 1,423,908 |
| **Cash Outflows** | | | | | | | | | | | | | | |
| Cost of Goods Sold | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 77,000 | 1,001,000 |
| Expenses | 53,904 | 29,983 | 24,980 | 31,680 | 41,799 | 31,721 | 26,082 | 34,391 | 29,323 | 42,798 | 34,245 | 24,550 | 23,068 | 428,524 |
| Total Cash Outflows | 130,904 | 106,983 | 101,980 | 108,680 | 118,799 | 108,721 | 103,082 | 111,391 | 106,323 | 119,798 | 111,245 | 101,550 | 100,068 | 1,429,524 |
| Ending Cash Balance | (26,996) | (23,979) | (15,960) | (14,640) | (23,439) | (22,160) | (15,241) | (16,632) | (12,955) | (22,754) | (23,999) | (15,549) | (5,616) | (5,616) |

# 2820-30 North Cicero, LLC

| | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 24 | 37 | 38 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/9 to 8/15 | 8/16 to 8/22 | 8/23 to 8/29 | 8/30 to 9/5 | 9/6 to 9/12 | 9/13 to 9/19 | 9/20 to 9/26 | 9/27 to 10/3 | 10/4 to 10/10 | 10/11 to 10/17 | 10/18 to 10/24 | 10/25 to 10/31 | 11/1 to 11/7 | |
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| Income | | | | 38,605 | | | | 38,605 | | | | | 38,605 | 115,815 |
| Expense | | | | | | | | | | | | | | |
| Interest to FDIC | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 10,832 |
| Manager Compensation | | | 33,000 | | | | 33,000 | | | | | 33,000 | | 99,000 |
| Maintenance | | | | 2,500 | | | | 2,500 | | | | | 2,500 | 7,500 |
| Insurance | | | | 1,150 | | | | 1,150 | | | | | 1,150 | 3,450 |
| Other Expenses | | | | 500 | | | | 500 | | | | | 500 | 1,500 |
| Professional (incl. accrued legal) | | | | 5,000 | | | | 5,000 | | | | | 5,000 | 15,000 |
| Taxes (accrued) | | | | 11,000 | | | | 11,000 | | | | | 11,000 | 33,000 |
| **Total Expense** | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 833 | 33,833 | 20,983 | 170,282 |
| **Net Income** | (833) | (833) | (33,833) | 17,622 | (833) | (833) | (33,833) | 17,622 | (833) | (833) | (833) | (33,833) | 17,622 | (54,467) |
| Beginning Balance | 84,698 | 83,865 | 83,032 | 49,198 | 66,820 | 65,987 | 65,154 | 31,320 | 48,942 | 48,109 | 47,276 | 46,442 | 12,609 | |
| Sales | 0 | 0 | 0 | 38,605 | 0 | 0 | 0 | 38,605 | 0 | 0 | 0 | 0 | 38,605 | 115,815 |
| Available Cash Balance | 84,698 | 83,865 | 83,032 | 87,803 | 66,820 | 65,987 | 65,154 | 69,925 | 48,942 | 48,109 | 47,276 | 46,442 | 51,214 | |
| Cash Outflows | | | | | | | | | | | | | | |
| Expenses | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 833 | 33,833 | 20,983 | |
| Total Cash Outflows | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 33,833 | 20,983 | 833 | 833 | 833 | 33,833 | 20,983 | |
| Ending Cash Balance | 83,865 | 83,032 | 49,198 | 66,820 | 65,987 | 65,154 | 31,320 | 48,942 | 48,109 | 47,276 | 46,442 | 12,609 | 30,231 | 30,231 |